**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-21625-ALTMAN/Reid**

**FASSMER SERVICE AMERICA, LLC**,

     *Plaintiff,*

v.

**CIRAMAR SHIPYARDS INTERNATIONAL
TRADING CO. LTD.**,

     *Defendant.*

_____/

**ORDER GRANTING MOTION TO JOIN
NECESSARY PARTY DEFENDANTS**

The Plaintiff has filed a Motion to Join Necessary Party Defendants and to Remand Case Back to State Court (the "Motion to Remand") [ECF No. 21]—which, after careful review, we now **GRANT**.[1]

**THE FACTS**

This case presents a convoluted set of facts involving an interlocking cast of characters and litigation across multiple jurisdictions. On June 10, 2021, the Plaintiff, Fassmer Service America, LLC ("Fassmer"), entered into a contract (the "Master Agreement") with the Defendant, Ciramar Shipyards International Trading Company Ltd. ("Ciramar"), for the provision of maritime goods and services. *See* Complaint [ECF No. 1-3] ¶ 8. The Master Agreement includes a forum selection clause designating Miami-Dade County as the venue for any potential disputes. *See id.* at 18. Throughout 2021 and into 2022, Fassmer provided goods and services to Ciramar under the terms of the contract and invoiced those goods and services accordingly. *Id.* ¶ 9. When Ciramar failed to pay the invoices—for reasons

---

[1] The Motion to Remand is ripe for resolution. *See* Defendant's Response to Motion to Remand (the "Response") [ECF No. 28]. The Plaintiff did not file a reply. *See generally* Docket.

we outline below—Fassmer sued Ciramar in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, asserting claims of breach of contract, unjust enrichment, and quantum meruit. *See generally* Complaint. Ciramar removed this case to federal court on May 2, 2023, under the provisions of 28 U.S.C. §§ 1332, 1441, and 1446.[2] *See* Notice of Removal [ECF No. 1] at 1. In short, "[a]t the time of removal . . . this was a simple collection case wherein Plaintiff, Fassmer, was exercising its right to sue Ciramar in Florida to recover monies owed under a contract for the provision of maritime goods and services[.]" Motion to Remand at 5.

On May 19, 2023, Ciramar filed a Motion to Dismiss [ECF No. 11], connecting our case to a separate but related lawsuit in the Dominican Republic. Fassmer then filed its Motion to Remand on June 12, 2023, seeking to join two additional defendants: Moises Profesionales Marítimos, S.R.L. ("MPM") and Craig Gundry. *See generally* Motion to Remand. Ciramar filed its Response to the Motion to Remand on June 26, 2023, alleging improper joinder.

The Complaint alleges that Ciramar owes Fassmer $125,494.44 in "materials and services provided" and $16,400 in "machinery and equipment." Complaint ¶¶ 11, 16. In its Motion to Dismiss, Ciramar appears to concede that it owes Fassmer money and equipment. But, according to Ciramar, its hands are tied because both the money and the equipment are caught up in garnishments in the Dominican lawsuit:

> [Ciramar] is a non-party garnishee caught in a fight between Plaintiff Fassmer . . . and its provider Moises Servicios Marítimos, S.R.L. ("MSM").[3] In prior proceedings in the Dominican Republic, MSM seeks to collect a debt from Fassmer for services allegedly provided in that country. In connection with that effort, in October 2022, MSM served prejudgment writs of garnishment on Ciramar in the Dominican Republic. As required

---

[2] According to the Complaint, Fassmer is a Florida limited liability company, and Ciramar is a corporation "organized and operating in the Dominican Republic." Complaint at 2. Fassmer's proposed Amended Complaint, however, describes Ciramar as a "Nevis corporation operating in the Dominican Republic." Proposed Amended Complaint [ECF No. 21] at 22.

[3] Moises Profesionales Marítimos, S.R.L. ("MPM"), is sometimes referred to as "Moises Servicios Marítimos, S.R.L." or "MSM" in the briefings. For purposes of this Order, we'll refer to the company as MPM.

by Dominican law, Ciramar garnished the funds and property it was holding for Fassmer there, and immediately informed Fassmer. Fassmer ignored that and failed to challenge the garnishments. Six months later, Fassmer brought this action seeking the very funds and equipment garnished by MSM.

Motion to Dismiss at 6. Ciramar claims that it can't pay Fassmer back because it's bound by the laws of the Dominican Republic:

> Ciramar, and the undersigned, have repeatedly advised Fassmer and its counsel that Ciramar is bound by the garnishments and cannot release the claimed funds or equipment without approval from a Dominican court . . . . [A]s mandated by Article 557 of the Dominican Republic Code of Civil Procedure, Ciramar is legally obliged [sic] to . . . retain any payment which could be owed to Fassmer . . . until a definitive judicial decision has been reached either authorizing Ciramar to proceed with payment or to withhold the amount now under the garnishment.

*Id.* at 6, 10. Because (Ciramar claims) its hands are tied, it asks us to abstain from this case on the grounds of international comity and to allow the Dominican Republic to adjudicate the dispute along with the ongoing case between MPM and Fassmer: "Circuit precedent," Ciramar says, "mandates abstention on these facts, and dismissal of the Complaint on international comity grounds. The Dominican court is uniquely positioned to settle both sets of claims: [MPM]'s against Fassmer and Fassmer's against Ciramar." *Id.* at 6.

For its part, Fassmer insists that something isn't quite right with Ciramar's neat and tidy recitation of the relevant facts. Back in 2018, Fassmer hired a man named Craig Gundry to serve as General Manager of a "new division referred to as Fassmer Technical Projects." Employment Agreement [ECF No. 21] at 44. Under his employment agreement with Fassmer, Gundry agreed not to "accept any other employment or engage, directly or indirectly, in any other business, commercial, or professional activity (whether or not pursued for pecuniary advantage) which creates an actual or potential conflict of interest with [Fassmer's] business, or which otherwise is reasonably likely to interfere with [Fassmer's] business[.]" *Ibid.* Unbeknownst to Fassmer, however, and in apparent violation of his Employment Agreement, "Gundry simultaneously owned another competing company"—MPM. Motion to Remand at 7. Fassmer alleges that, in June of 2019, Gundry duped

Fassmer (his employer) into signing a contract with MPM (his own company), under which Fassmer agreed to pay MPM "an agreed rate of $19.50 per hour to perform boat repair and maintenance, shipbuilding and floating structures, engineering activities and technical consultancy." *Id.* at 8. "Fassmer later learned that on April 19, 2022, MPM wired $17,000.00 to Gundry . . . and that shortly thereafter, on May 4, 2022, MPM wired an additional $32,000.00 to Gundry." *Ibid.* Remember, MPM is the plaintiff in the Dominican lawsuit.

In May of 2022, after Fassmer discovered that MPM was sending money to Gundry, Gundry wrote a letter to Fassmer apologizing "for not being honest"—and admitting his involvement in MPM *and* Ciramar. *See* Gundry Letter [ECF No. 21] at 50–54. In this letter, attached to the Motion to Remand as Exhibit B, Gundry conceded that MPM "is a company formed from a previous company I owned." *Id.* at 53. He also admitted that he has close ties to Ciramar, the Defendant in *this* case: "[Ciramar] had intended," he wrote, "to add me as a board member to serve as Fassmer Liaison. This has not become official yet, but I know has been included in investor presentations . . . . I have been a key participant in many investor meetings to help convince private investors to provide the funds necessary for Ciramar expansion." *Id.* at 54. So, according to Fassmer, "any penalty that Ciramar might have to pay MPM in the D.R. garnishment proceeding, would essentially be Gundry paying himself . . . . [D]epending on which hat Gundry is wearing at the moment, Gundry is secretly either the garnishor or the garnishee over the same money[.]" Motion to Remand at 9–10.

Based on Ciramar's argument in its Motion to Dismiss (that it's a non-party garnishee and that it cannot remunerate Fassmer because of MPM's prejudgment writs of garnishment in the Dominican Republic), Fassmer now seeks to join MPM and its owner, Gundry, as necessary parties (specifically, as defendants) in our case:

> Ciramar is asking this Court to send the case to the D.R., despite a Florida forum
> selection clause and choice of law in the contract between Fassmer and Ciramar.
> Defendant Ciramar has thus complicated the simple Florida state court collection case
> by asserting arguments that implicate third parties, MPM and Gundry, and necessitate

amending the Florida Complaint so that all inextricably intertwined claims, counterclaims, and crossclaims can be adjudicated in one proceeding . . . . The Court must consider Gundry's central involvement in both Fassmer's Florida collection case against Ciramar, and the dispute against Fassmer filed by MPM at the behest of Gundry in the Dominican Republic. The relationship between Fassmer, Ciramar, MPM, and Gundry are inextricably interwoven and Gundry is a necessary party for a complete determination of all of the issues in the Florida suit because he is at the center of all of the claims.

Motion to Remand at 6–7. Fassmer also seeks leave to amend its Complaint to assert new claims against MPM and Gundry for breach of contract, breach of fiduciary duty, and usurpation of corporate opportunity. *See generally* Proposed Amended Complaint [ECF No. 21] at 22–42.

Because this case was removed based on our diversity jurisdiction, *see* Notice of Removal at 1—and since Gundry and Fassmer are both Florida citizens within the meaning of 28 U.S.C. § 1332, *see* Motion to Remand at 10—the Plaintiff's proposed joinder would destroy complete diversity of citizenship and require a remand back to state court.[4]

## THE LAW

The Plaintiff's Motion to Remand seeks both joinder and remand, so it isn't governed by the liberal pleading standard of Rule 15(a)(2), which instructs courts to grant leave freely when "justice so requires." FED. R. CIV. P. 15(a)(2). Instead, in resolving the Motion to Remand, we must look to the provisions of 28 U.S.C. § 1447(e), which provides, in pertinent part, as follows: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

"The Court therefore has two options: deny joinder or permit it and remand the case." *T&G Corp. v. United Cas. & Sur. Ins. Co.*, 552 F. Supp. 3d 1334, 1339 (S.D. Fla. 2021) (Altman, J.). Four factors—referred to as the *Hensgens* factors—guide this decision: (1) the extent to which the purpose

---

[4] Ciramar's Notice of Removal asserts *only* diversity as the basis of our removal jurisdiction. *See* Notice of Removal at 2.

of the amendment is to defeat federal jurisdiction; (2) whether the movant has been dilatory in asking for the amendment; (3) whether the movant will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities. *See Dever v. Family Dollar Stores of Ga., LLC*, 755 F. App'x 866, 869 (11th Cir. 2018) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). Although the procedural choice is a binary one, we have "broad discretion in weighing these factors" and in deciding which route to take. *Ibid.*

A federal court should remand to state court any case that has been improperly removed. *See* 8 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

In evaluating whether the "particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (cleaned up); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). "To determine whether [a] case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

## ANALYSIS

Fassmer has established that joining MPM, Gundry, and Ciramar together in one case (at least in the United States) will be the most efficient way of litigating the parties' various competing interests while avoiding the pitfalls of parallel—and duplicative—litigation. The *Hensgens* factors thus weigh heavily in favor of joinder. We'll review each factor in turn.

*First*, we must evaluate the purpose of the proposed joinder and whether its aim is to defeat federal jurisdiction. Courts are generally suspicious of a plaintiff's efforts to join a non-diverse defendant after removal—"particularly where, as here, the plaintiff knew about the non-diverse defendant all along." *T&G Corp.*, 552 F. Supp. 3d at 1339. But "[t]he mere fact that the requested amendment would divest the Court of its jurisdiction does not, in itself, establish that [a plaintiff's] motive in seeking amendment is to accomplish this aim." *Fiddler's Creek Cmty. Dev. Dist. 2 v. U.S. Bank Nat'l Ass'n*, 2012 WL 2358295, at *3 (M.D. Fla. June 20, 2012) (Covington, J.). Here, Fassmer had good reason for leaving MPM and Gundry out of its original Complaint: because they weren't necessary parties in its ordinary breach-of-contract claim against Ciramar—at least not initially. *See* Motion to Remand at 5 ("At the time of removal from state court by Ciramar, this was a simple collection case wherein Plaintiff, Fassmer, was exercising its right to sue Ciramar in Florida to recover monies owed under a contract for the provision of maritime goods and services.").

A careful review of the briefing reveals that it was Ciramar's Motion to Dismiss that transformed MPM and Gundry into key players in this case—*not* (as Ciramar would have us believe) Fassmer's bad-faith attempt to "wrestl[e] jurisdiction from this Court[.]" Response at 5. As we've said, Ciramar argues that it cannot and will not release any of the money and equipment it allegedly owes Fassmer because "these very funds and equipment . . . have been garnished by [MPM] in the Dominican Republic." Motion to Dismiss at 21. Ciramar also contends that this case belongs in the Dominican Republic, where a "Dominican court [can] adjudicate both sets of claims: [MPM]'s against

Fassmer and Fassmer's against Ciramar." *Ibid.* By specifically identifying the lawsuit between MPM and Fassmer as the reason it cannot pay Fassmer *in our lawsuit*, Ciramar has made the resolution of this case contingent upon the result of Fassmer's dispute with MPM and Gundry.

More importantly, the crux of Ciramar's argument in its Motion to Dismiss is that all the disputes among the various players we've mentioned are interconnected and belong together in a single court:

> Ciramar and [MPM] both have their places of business in the Dominican Republic[,] and, notably, Fassmer's claim here and [MPM]'s claim in the Dominican Republic both arise out of services performed and conduct allegedly taking place in that country . . . . [T]his case can be much more efficiently litigated in the Dominican Republic where [MPM] and Ciramar are present and Fassmer engaged in substantial business with both companies, where most of the evidence is located, and where the Garnishments are in effect . . . . *[B]oth this case and the Dominican Litigation involve significant common issues and parties.*

*Id.* at 15, 17 (cleaned up & emphasis added). Ciramar has, therefore, undermined the contradictory position it has taken in this Response, where it suddenly argues that the "Plaintiff's threatened claims against Mr. Gundry and MPM arise from Plaintiff's separate and unrelated contractual relationship with each of them." Response at 5. It's absurd for Ciramar to advance this argument after having argued *precisely the opposite* point in its Motion to Dismiss. But, for purposes of our task today, it suffices to point out that Ciramar's Motion to Dismiss offers a contention that's strikingly similar to Fassmer's: *viz.*, that this case and the case in the Dominican Republican involve "inextricably intertwined claims, counterclaims, and crossclaims" that should be "adjudicated in one proceeding." Motion to Remand at 6. Given that the parties essentially agree on this fundamental point (and only disagree on *which* court should adjudicate those claims), we're not persuaded that Fassmer seeks to join MPM and Gundry "for the sole purpose of destroying federal jurisdiction." Response at 16. The first *Hensgens* factor thus weighs in favor of joinder.

*Second*, Fassmer caused no unnecessary delays in requesting this amendment and thus cannot be accused of engaging in "dilatory" tactics. *See Simon v. Howmedica Osteonics Corp.*, 981 F. Supp. 2d

1232, 1236 (S.D. Fla. 2012) (Altonaga, J.) (courts should consider whether the plaintiff was "dilatory" in seeking joinder). Fassmer filed its Motion to Remand on June 12, 2023—only six weeks after Ciramar removed the case to federal court—and well within this Court's amended-pleadings deadline. *See* Scheduling Order [ECF No. 15] (setting an amended-pleadings deadline of July 18, 2023). This second factor, in sum, likewise militates in favor of joinder.

Resisting this conclusion, Ciramar cites an Eleventh Circuit case, *Hickerson*, for its position that Fassmer *was* dilatory:

> Plaintiff argues that it was not dilatory in seeking to join Mr. Gundry because it filed the Motion shortly after removal and within the deadline to amend pleadings. The Eleventh Circuit rejected a similar argument in *Hickerson*, reasoning that "the swift filing does not necessarily indicate diligence" because there as here, Plaintiff knew of the non-diverse defendant's alleged involvement in the underlying facts before it filed the Complaint. *Hickerson*, 818 F. App'x at 886 ("A plaintiff is dilatory in adding a non-diverse party when the plaintiff waits an unreasonable amount of time before asking for an amendment, despite having been able to ascertain the party's role in the suit all along.").

Response at 12. But Ciramar leaves out a crucial difference between *Hickerson* and our case: In *Hickerson*, which involved a car accident, the plaintiffs knew of the non-diverse defendant's "role *in the accident* when it happened, more than two years" before they even filed the complaint. *Hickerson v. Enter. Leasing Co. of Ga., LLC*, 818 F. App'x 880, 886 (11th Cir. 2020) (emphasis added). In our case, by contrast, although Fassmer knew about Gundry's alleged misdeeds in a different context, it didn't learn about "the MPM case [in the Dominican Republic] and the pre-judgment garnishment" until April 27, 2023—three months *after* this case was filed. Motion to Remand at 14. And it wasn't until May 19, 2023, when Ciramar filed its Motion to Dismiss, that Fassmer discovered Ciramar was using the MPM lawsuit as its justification for non-payment. *Id.* at 13. Since Fassmer filed its joinder motion *less than a month* after Ciramar submitted its Motion to Dismiss, *see generally* Docket, we cannot say that Fassmer was (in any respect) "dilatory."

*Third*, Fassmer "will be significantly injured if amendment is not allowed." *Hensgens*, 833 F.2d at 1182. For one thing, Fassmer must now defend itself against the claims Ciramar made in its Motion to Dismiss, which will presumably involve disputing MPM and Gundry's writs of garnishment in the Dominican proceeding. *See* Motion to Remand at 12–13 ("Ciramar [claims] it [does] not have to pay Fassmer because of a pre-judgment writ of garnishment in [the] Dominican case brought by MPM against Fassmer. In response, Fassmer has to show why the claimed monies are not owed to MPM."). For another, Fassmer will be significantly injured by the "threat of parallel litigation." *T&G Corp.*, 552 F. Supp. 3d at 1340. "[T]he burden of having to prosecute two separate lawsuits is a significant injury which, although it does not mandate allowing the amendment, weighs in favor of permitting the joinder." *Ibid.* (quoting *Godwin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2006 WL 3924795, at *2 (M.D. Ala. Dec. 15, 2006)). In this case, denying Fassmer's joinder motion would result in *three separate and ongoing lawsuits*.

Ciramar doesn't dispute that there's "parallel" litigation pending in the Dominican Republic. *See* Response at 8. And Fassmer tells us that, if we deny its request to join additional defendants, it will be forced to bring a new case in Florida state court to resolve its dispute with MPM and Gundry: "There is," Fassmer credibly alleges, "a definite threat of parallel litigation in a separate Florida lawsuit which will be filed if this motion is denied. It would be burdensome for Fassmer to have to litigate in multiple cases that overlap in both fact and law . . . . Here, the legal fees, which are already substantial, might double or even triple if Fassmer has to sue MPM and Gundry separately." Motion to Remand at 14–15. Litigating three parallel lawsuits (we think it goes without saying) will jack up the parties' legal fees, waste judicial resources, and needlessly increase the likelihood of inconsistent or conflicting judgments. *See Hensgens*, 833 F.2d at 1182 (holding that the diverse defendant's "interest in retaining the federal forum" must be weighed against "the danger of parallel federal/state proceedings [and] the inherent dangers of inconsistent results and the waste of judicial resources").

Putting the Dominican lawsuit aside, therefore, Ciramar's interest in retaining a federal forum is substantially outweighed by the near-guarantee of a parallel state proceeding. *See Cox v. Wal-Mart Stores E., LP*, 2023 WL 4535058, at *4 (M.D. Ga. July 13, 2023) (finding that the risk of a parallel state proceeding outweighed the defendants' interest in retaining a federal forum because the "most logical, economical and equitable approach is to determine the respective rights and liabilities of all relevant parties *inter se* in one proceeding"); *Delorenzo v. Wal-Mart Stores, Inc.*, 2017 WL 6525009, at *3 (N.D. Ala. Dec. 21, 2017) (holding that the third *Hensgens* factor weighed in favor of joinder because "a denial of the proposed amendment would force [the plaintiff] to litigate her claims against [the non-diverse defendant] in a separate lawsuit in state court," which would "cause[ ] her to bear additional costs and time and does not serve the purpose of judicial economy" (cleaned up)); *T&G Corp.*, 552 F. Supp. 3d at 1336 ("This case straddles the muddled intersection between several complex contractual provisions signed by three different parties—all of whom should be permitted to resolve their outstanding issues in one case, rather than in two separate cases. Unfortunately for the Defendant, that means this case cannot proceed in federal court."). Denying Fassmer's proposed amendment would force the Plaintiff to litigate its claims against MPM and Gundry in state court—this, on top of the litigation that's proceeding apace here and in the Dominican Republic. Because parallel state litigation would waste court resources, burden the parties, and potentially result in inconsistent judgments, we find that the third *Hensgens* factor weighs heavily in favor of joinder.

*Fourth*, and relatedly, we look to "any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182. Ciramar insists that "joining Mr. Gundry will prejudice Ciramar [by] unjustly deny[ing] its right to defend this action in a federal forum." Response at 14. That's a bizarre claim for Ciramar to make given its earlier position (advanced in its Motion to Dismiss) that the "Dominican Litigation . . . has priority over this action," so "[d]ismissal is the only appropriate outcome." Motion to Dismiss at 11, 21; *see also id.* at 6 ("The Dominican court is uniquely positioned to settle both sets of claims:

[MPM]'s against Fassmer and Fassmer's against Ciramar."). Ciramar cannot credibly argue in one motion that this case doesn't belong in federal court, while, in another, insisting that the Plaintiff "seeks to deprive Ciramar of its properly selected forum" in federal court. Response at 16. Given that Ciramar itself has maintained that "this Court's exercise of jurisdiction would create the prospect of dueling courts, conflicting judgments, and attempts to enforce conflicting judgments," we don't think the balance of equities tips in Ciramar's favor.

As to other factors bearing on the equities, we've already established that nonjoinder could result in three separate actions, which would create extraordinary inefficiency and increase the risk of conflicting judgments. This inequity is also "one-sided, because [Ciramar] would never have to participate in any parallel state litigation—and thus has only to gain from forcing [Fassmer] to divide its resources and attention." *T&G Corp.*, 552 F. Supp. 3d at 1341 n.2. For this reason, too, the fourth *Hengens* factor—"any other factors bearing on the equities"—favors joinder.

Against all this, Ciramar advances one final argument: fraudulent joinder. "To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). "This burden is a heavy one," *ibid.*, because, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court," *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983)). To establish fraudulent joinder, Ciramar would have to show, by "clear and convincing evidence," *Stillwell*, 664 F.3d at 1332, that "there is *no* possibility that the plaintiff can prove a cause of

action against the resident (non-diverse) defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis added).

Ciramar hasn't come close to meeting that high burden here. Ciramar advances two arguments in support of its claim of fraudulent joinder. *First*, it (correctly) notes that a defendant is fraudulently joined "when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." Response at 16. Citing this principle, Ciramar contends that the "claim arising under the [Master Agreement] between Plaintiff and Ciramar is fundamentally different and not genuinely connected to Plaintiff's threatened claims against Mr. Gundry." *Ibid. Second*, Ciramar says that, "even if it were true that Mr. Gundry somehow is controlling MPM and Ciramar— which is not true as it pertains to Ciramar at least—he is not needed for Plaintiff to seek relief from its contractual counterparts Ciramar or MPM[.]" *Id.* at 17.

As to the first argument, we reject Ciramar's view that Fassmer's claims against MPM and Gundry have "no real connection" to Fassmer's claims against Ciramar because, as we've said, it admits (in its Motion to Dismiss) that "this case and the Dominican Litigation involve significant common issues and parties." Motion to Dismiss at 17. And, with respect to the contention that Gundry is "not needed for Plaintiff to seek relief from its contractual counterparts," Response at 17, the law is clear that "a non-diverse party need not be *indispensable* as defined by Fed. R. Civ. P. 19 in order for a district court to permit joinder and remand the action to state court," *Heininger v. Wecare Distribs., Inc.*, 706 F. Supp. 860, 862 (S.D. Fla. 1989) (Nesbitt, J.) (emphasis added). Ciramar, in short, hasn't met its heavy burden of establishing fraudulent joinder—principally because it's failed to show, by clear and convincing evidence, *no* possibility that Fassmer might prevail in its claims against MPM and Gundry.

*        *        *

13

After careful review, therefore, we hereby **ORDER and ADJUDGE** as follows:

(1) The Plaintiff's Motion to Join Necessary Party Defendants and to Remand Case Back to State Court [ECF No. 21] is **GRANTED**.

(2) The case is **REMANDED** to the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.

(3) The Clerk of Court is directed to **CLOSE** this case. All pending deadlines and hearings are **TERMINATED**, and any pending motions, including the Defendants' Motion to Dismiss [ECF No. 11], are **DENIED AS MOOT**.

**DONE AND ORDERED** in the Southern District of Florida on October 4, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record